Harry DUNCAN, Plaintiff,

v.

DRAVO CORPORATION, Defendant.

Civ. A. No. 76–540.

United States District Court,
W. D. Pennsylvania.

Feb. 9, 1977.

Leonard E. Price, Pittsburgh, Pa., for plaintiff.

Bruce R. Martin, Pittsburgh, Pa., for defendant.

1. Plaintiff brought suit under the Jones Act and under theories of unseaworthiness and negligence of the vessel.

2. 33 U.S.C. § 905(b) provides:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of Section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by

OPINION

SNYDER, District Judge.

Defendant Dravo Corporation has moved the Court to alter or amend its order of partial summary judgment of December 14, 1976, which dismissed all claims against Defendant except a negligence action against it as vessel owner.[1] The Court held that this action was available under § 905(b) of the Longshoremen's and Harbor Workers' Compensation Act[2] even though Dravo Corporation was not only the owner of the barge on which Plaintiff was working but also the direct employer of the injured longshoreman. Defendant now contends that under the facts of this case this negligence claim must also be dismissed.

I

The Defendant first argues that because the Court had determined that the barge on which Plaintiff was injured was not in navigation, § 905(b) does not permit an action against the Defendant as owner of the barge. This contention is based on the theory that § 905(b) must be limited by *Sieracki* seaman's principles and thus requires a brief review of the history of these principles and the exclusive remedy provision of the Longshoremen's Act.

Prior to 1972, the Longshoremen's Act provided that "[t]he liability of an employer prescribed in [the Act] shall be exclusive and in place of all other liability of such employer to the employee . . .." 33 U.S.C. § 905 (1970). The Supreme Court

the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

held that, despite this exclusive remedy provision, a longshoreman injured while working on a vessel could sue the *vessel* for damages. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1956). The Court held that this vessel liability could be based on a non-delegable duty to provide a safe place to work, owed to longshoremen by extension of the vessel's warranty of seaworthiness.[3] Nor was action against the vessel precluded by the Longshoremen's Act even if the vessel was the longshoreman's employer, the vessel-employer in effect being treated as two separate entities for purposes of § 905.[4] *Jackson v. Lykes Bros. S. S. Co.*, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967); *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). In *Ryan Stevedoring Co., Inc. v. Pan Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the court virtually eviscerated the exclusive remedy provision of the Longshoremen's Act when it permitted the vessel to recover indemnity from the employer.

The Supreme Court, however, did not extend the warranty of seaworthiness to all longshoremen. Unseaworthiness had evolved as an essentially open-ended no-fault liability separate from negligence principles because of the peculiar hazards endured by seamen, and was extended to longshoremen who incur similar risks. The Court therefore determined that no warranty of seaworthiness would extend to longshoremen working on a vessel withdrawn from navigation. *Roper v. United States*, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961); *West v. United States*, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959).

Because this unseaworthiness remedy would not have been available to longshoremen repairing a vessel not in navigation, the Defendant asserts that a negligence action under amended § 905(a) & (b) is likewise unavailable. We believe that § 905(b) and the judicial precedent which survived Congressional revision of the Act provide otherwise.

■ In the 1972 amendment of § 905, Congress revitalized the exclusive remedy provision by eliminating the vessel's right to recover indemnity from the employer and eliminating unseaworthiness as a basis for recovery from the vessel. But in so doing, Congress chose not to completely negate the scheme of vessel liability established by judicial precedent. It did not preclude all suits against the vessel for damages, even though unseaworthiness would no longer afford a no-fault basis for recovery. Section 905(b) expressly provides that a negligence action against the vessel is not excluded by § 905(a), reflecting a Congressional determination that although longshoremen do not incur the peculiar hazards of seamen which give rise to the extensive remedy of unseaworthiness, permitting a fault-based remedy in negligence would encourage vessel safety without detracting from the policies underlying § 905(a).[5]

■ Nor did Congress negate the judicial precedent permitting suit against the vessel even when the vessel is also the employer. To the contrary, Congress intended to afford all longshoremen, regardless of whether employed directly by the vessel or by an independent contractor,

---

**3.** The district court in *Sieracki* had determined that the vessel could be sued by a longshoreman even if he was not within the Jones Act because the vessel was not the employer. But the district court concluded that the action must be based in negligence. 57 F.Supp. 724 (E.D.Pa.1944). The Supreme Court implicitly affirmed that the vessel could be sued, but held that the suit could also be based on unseaworthiness.

**4.** *But see Murphy v. Woods Hole, Martha's Vineyard and Nantucket S. S. Authority*, 545

F.2d 235 (1st Cir. 1976) (holding that prior to amendment in 1972, § 905 precluded suits based in negligence against the vessel-employer). We agree with the dissent in *Murphy*, which is more consistent with the Third Circuit holding in *Griffith*, n. 7 *infra* that § 905(b) permits suit against vessel-employers.

**5.** *See* H.R.Rep.No.1441, 92d Cong., 2d Sess. (1972), U.S.Code Cong. & Admin.News 1972, p. 4698.

identical remedies for injuries suffered.[6] The only limitation imposed in § 905(b) on a negligence action against a vessel-employer is that the longshoreman cannot sue for the negligence of those providing longshoring services. This limitation is entirely consistent with Court precedent of treating the vessel-employer as separate entities for purposes of § 905. The vessel-employer will not be held responsible for damages, other than compensatory benefits due under the Act, for breaches of duties arising out of the employer-employee relationship, but it will be subject to liability for damages caused by negligence in the capacity of vessel owner. Whether the vessel owed the longshoreman a duty and was at fault will be determined by traditional negligence principles, as if the longshoreman were a business invitee of a land-based property owner.[7] *Anuszewski v. Dynamic Mariners Corp. Panama*, 391 F.Supp. 1143 (D.Md. 1975); *Ramirez v. Toko Kaiun K. K.*, 385 F.Supp. 644 (N.D.Cal.1974).

This brief history reveals that to hold that a § 905(b) negligence action is precluded when the vessel is not in navigation would compel an unwarranted and overly restrictive reading of the statute. The "ghosts" of *Sieracki* and *The Yaka, supra*, have clearly survived the 1972 amendments insofar as they permit a longshoreman to sue the vessel for damages whether the longshoreman be employed by the vessel or not. Even before the 1972 amendments, the Supreme Court had not concluded in *Roper, supra*, and *West, supra*, that in negligence analysis a vessel not in navigation did not owe a longshoreman a duty of reasonable care, or that the longshoreman was precluded from recovering damages from the vessel for its negligence. In both *Roper* and *West*, in fact, after determining that unseaworthiness would not avail a remedy, the Court noted that no negligence was proved. Congress has now specifically provided that a negligence rem-

edy is available and that Courts must engage in traditional negligence analysis to determine if a duty was owed and breached, and we see no reason to limit that action to situations in which the longshoreman could have recovered for unseaworthiness.

Contrary to Defendant's implication, such a reading of § 905(b) does not eviscerate § 905(a). Under this interpretation, no employer would be liable, either directly or through indemnity to the vessel, for damages other than compensation due under the Act for negligence arising out of the employer-employee relationship. The amendments therefore adequately insulate employers from unforeseen damages and they are thus encouraged to cooperate in providing more extensive compensatory benefits under the terms of the Longshoremen's Act. Vessels, too, are not treated unfairly under this interpretation. They will not be saddled with open-ended no-fault liability. As stated in Senate Report on P.L. 92–576:

"Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the unseaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker."

*Quoted in* the concurring opinion of Judge Van Dusen in *Marant v. Farrell Lines, Inc.*, 550 F.2d 142 (3d Cir. 1977) (decided January 31, 1977).

## II

Defendant further argues that § 905(b) does not permit the Plaintiff to sue Dravo Corporation as owner of the tugboat which allegedly bumped the barge on which he was working causing his fall because, although the tug was in navigation, it was not the vessel "in connection with which"

6. *Id.*

7. This traditional negligence analysis, of course, does not mean that the Court must

apply state law. *See Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 44–45 (3d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

he was injured. He refers to § 902(21) of the Act which defines "vessel" as that vessel "upon which or in connection with which [the longshoreman] suffers injury . . . and said vessel's owner . . . ." Consequently, when § 905(b) permits an action against the vessel, it permits only an action against the vessel on which the longshoreman was working—here, the barge—even if the Defendant also owned the other vessel alleged to be negligent.

We need not here determine the meaning of the phrase "in connection with", for even if it is as limited as Defendant suggests, the Plaintiff has alleged facts sufficient to raise a question for the jury. As owner of the barge, Defendant knew that repairs were being conducted in an area where it operates other vessels. The jury may well find that Dravo owed a duty as owner of the barge to refrain from operating other vessels in such manner as to create an unreasonable risk of harm to the repairmen on the barge.

Accordingly, Defendant's motion to alter or amend our previous order is denied. An appropriate order will be entered.