**Evelyn G. SMITH, Administratrix of the Estate of Earl Roy Smith, Deceased, Plaintiff-Appellant,**

v.

**EASTERN SEABOARD PILE DRIVING, INC. and R. W. Denny & Buckley & Co., T/A Denny & Buckley, a joint venture, Defendant-Appellee.**

**No. 806, Docket 78–7531.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1979.

Decided Aug. 15, 1979.

---

Edward M. Katz, New York City (Phillips & Cappiello, New York City, Adler, Barish, Daniels, Levin & Creskoff, Milton M. Bo-

rowsky, Philadelphia, Pa., of counsel), for plaintiff-appellant.

Peter M. Pryor, New York City (Burlingham Underwood & Lord, William M. Kimball, New York City, of counsel), for defendant-appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and CARTER, District Judge.*

ROBERT L. CARTER, District Judge:

This case arose out of the untimely death of Earl Roy Smith, who drowned while scuba diving to inspect a damaged dredge. Evelyn G. Smith, the decedent's wife and administratrix of his estate, filed an action seeking damages from her husband's employer. The employer, Eastern Seaboard Pile Driving, Inc. ("Eastern") prevailed when the District Court held that the plaintiff could not maintain an action under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., because the decedent had been providing repair services at the time of the accident and was killed as the result of the negligence of other employees who were also doing repair work. We reverse.

*Factual Background*

In March, 1973, Earl Roy Smith was hired by Eastern to work as a leverman aboard the dredge Beverly M. As such, he was responsible for operating machinery on the dredge while the Beverly M was engaged in excavation off the shore of Jones Beach. In early April, 1973, a storm damaged the digging mechanism of the dredge, and on April 6, Robert Mutch, the president of Eastern, contacted Smith to ask if he would be willing to work as a scuba diver to examine the damage. Smith, who had previously asked Mutch to employ him as a staff diver, accepted the offer.

On the same day, Smith boarded the tug Margaret G, owned *pro haec vice* by Eastern, and set off for the site of the dive. In addition to the tug crew, Mutch, who was in charge of the operation, and Bert Johnson, the master of the dredge, were aboard.

When the tug arrived near the dredge, it maneuvered into position and Smith entered the water by jumping from the tug's railing. He immediately surfaced, inflated his life vest, and signalled for assistance. Mutch ran to the boat deck in order to obtain a life ring, and the tug captain began to maneuver the tug around part of the submerged dredge apparatus in order to approach the floundering diver.

When the tug was repositioned, the life ring was tossed to Smith and he was pulled to the side of the vessel. However, as the men on the tug vainly tried to hoist him aboard, Smith's scuba tank became hooked in the tire bumper on the side of the tug causing his head to be submerged. Johnson, the dredge master, ignored his personal safety and climbed over the side of the tug on to the tire bumpers in order to tie a rope around Smith. After sliding the line as far up around Smith's body as he could, Johnson scrambled back aboard the tug. However, when the men tried to pull Smith up again, the rope caught around his knees and turned him upside down with his head underwater.

By this time, the captain of the Margaret G had called for assistance from the tug Callinan which was nearby. Mutch managed to use a knife to cut off Smith's diving gear, and with the help of crew members from the Callinan, Smith was hauled aboard the Margaret G. Artificial respiration was administered, and Smith was rushed by helicopter to the Nassau County Medical Center where he was pronounced dead on arrival. An autopsy revealed that he had died of asphyxia due to drowning.

*District Court Proceedings*

Appellant originally based this action on three separate sources of law: the Jones Act, 46 U.S.C. § 688; § 5(b) of the LHWCA, 33 U.S.C. § 905(b); and the admiralty principles of *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The Jones Act claims were tried to a jury while the remaining claims were reserved by stipulation of the

* Of the Southern District of New York, sitting by designation.

parties for determination by the District Court following the jury trial. The jury rendered a special verdict finding that Smith was not a seaman for purposes of the Jones Act, and the District Court therefore proceeded to consider the remaining issues. Construing Smith's relation to Eastern as that of an independent contractor, the District Court held that the *Kermarec* principles applied. It found Eastern negligent for (1) failing to have a standby or emergency plan for the rescue of Smith, (2) failing to have immediately available a rescue line, life ring, life raft, or other similar equipment, and (3) failing to attach a ladder or platform to the tug to facilitate Smith's return to the vessel. 1978 A.M.C. 2068, 2075 (E.D.N.Y.). The court explicitly found that the employees of Eastern committed no negligent acts after Smith had entered the water and during the ill-fated rescue operation. However, the District Court did hold Smith at fault for his failure to take precautions for his own safety, and it accordingly reduced the damage figure by sixty percent.[1] *Id.* at 2076. In total, the District Court awarded appellant $230,428.80. *Id.* at 2084.

Subsequent to that decision, however, the parties brought to the attention of the District Court that they had stipulated that Smith had been an employee of Eastern rather than an independent contractor. They also agreed that in view of this stipulation the *Kermarec* rules were inapplicable.

Therefore, the court vacated its prior decision and went on to evaluate the LHWCA claims. 1978 A.M.C. 2555 (E.D.N.Y.). In its new opinion, the District Court found that Smith had been working in connection with the dredge rather than the tug at the time he was drowned and that the employees of the dredge were in no way responsible for the accident. According to the District Court, Smith's widow was not entitled to damages under the LHWCA because Smith had been killed while doing repair work on the dredge, and the cause of his death was the negligence of the employees on the tug who were also involved in the provision of repair services. The District Court thus considered the case to be governed by the clause in § 905(b) which immunizes a shipowner from a damage action by an employee who is injured while doing longshoring, ship building, or repair work as a result of the negligence of other employees of the vessel involved in the same activities.[2] This appeal followed.

*Appellant's Contentions*

Appellant now advances several theories for reversing the determination of the District Court. First, it is urged that neither Smith nor the employees aboard the tug were engaged in repair work, since they were only making an inspection preliminary to any future overhaul. Second, Eastern's negligence as shipowner rather than the negligence of its employees acting as repairmen caused the drowning, and thus the

---

1. The District Court referred to Smith's responsibility for his own demise as "contributory negligence." Strictly speaking, however, the District Court applied the appropriate doctrine of comparative negligence, which does not absolutely bar a plaintiff from bringing an action based on an injury for which he was partly responsible, but rather requires a reduction in damages in proportion to the plaintiff's fault.

2. 33 U.S.C. § 905(b) provides:
 In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of Section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any

agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

immunity provided by § 905(b) is unavailable in this case. Third, in order to establish a nexus between the vessel on which the accident occurred and the negligent employees, appellant argues that Smith drowned while working in connection with the tug, not the dredge. Alternatively, appellant contends that the dredge may be considered the liable vessel since its master, Johnson, and the overall supervisor, Mutch, were connected with the dredge and were the negligent parties. Finally, it is argued that if Eastern is found liable, the doctrine of comparative negligence cannot be invoked to reduce the award because Smith's drowning was the proximate result of negligence in effecting his rescue, an operation over which Smith had no control.

*Discussion*

Although the 1972 amendments to the LHWCA defy facile construction, there is no doubt that Congress sought to simplify the procedural tangle that had developed under court decisions designed to provide equitable relief to injured employees who otherwise could only secure decidedly inadequate compensation under the original LHWCA even for grave injuries and to place the cost of each injury on the party best able to prevent the accident.[3] *Hickman v. Jugoslavenska Linijska Plovidba Rijeka, Zvir*, 570 F.2d 449, 452 (2d Cir. 1978); *Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837, 839 (2d Cir. 1977). Accordingly, the land-based employee's action against the shipowner for unseaworthiness was abolished, and the vessel could not be held liable for accidents occurring when work had been entrusted to the

competence of a stevedore. *Cox v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 798, 802 (2d Cir. 1978); *Munoz v. Flota Merchante Grancolombiana, S.A., supra*, 553 F.2d at 840–41; *Kalogeros v. Brasileiro*, 446 F.Supp. 175, 178 (S.D.N.Y.1978) (Bryan, J.). Furthermore, the shipowner was no longer saddled with a non-delegable duty to provide a safe place to work. *Cox v. Flota Mercante Grancolombiana, S.A., supra*, 577 F.2d at 803.

 However, the 1972 amendments did not wholly immunize vessels from actions by land-based employees. The shipowner remains liable for its own failure to exercise care. *Ruffino v. Scindia Steam Navigation Co.*, 559 F.2d 861, 862 (2d Cir. 1977); *Munoz v. Flota Merchante Grancolombiana, S.A., supra*, 553 F.2d at 840; *Kalogeros v. Brasileiro, supra*, 446 F.Supp. at 177. For example, the owner retains the responsibility for supplying a safe place to work, although the stevedore assumes that responsibility when it is given exclusive control over the workplace. *See Lubrano v. Royal Netherlands S. S. Co.*, 572 F.2d 364, 374 (2d Cir. 1978) (dissent); *Espinoza v. United States Lines, Inc.*, 444 F.Supp. 405, 410 (S.D.N.Y.) (Goettel, J.), *aff'd*, 586 F.2d 832 (2d Cir. 1978). Thus, under the 1972 amendments the employee may maintain an action for damages if the injury results from negligence on the part of the shipowner, but if the negligent party is the stevedore or other intermediate employer, then the longshoreman or harbor worker is entitled only to compensation.

---

**3.** Congress originally passed the LHWCA to provide a comprehensive compensation system for land-based workers injured in the course of maritime employment. Employers such as stevedores who employ land-based personnel were to be relieved from damage liability for work-related injuries. In return, the employers would be obligated to contribute to a compensation system that would provide benefits to injured employees according to a statutory schedule. However, the compensation scheme provided such woefully inadequate benefits that the Supreme Court was prompted to create a system of judicial remedies for injured employees pursuant to its general admiralty

jurisdiction. *See Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837, 839 (2d Cir. 1977). First, the decision in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1948), permitted longshoremen to sue shipowners on grounds of unseaworthiness. Subsequently, the shipowners were authorized to implead the stevedores for breaching the warranty of workmanlike service. *Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Thus, the injured employee could achieve the desired result without violating the statutory proscription against suing his employer directly.

■ In identifying the liable party under the LHWCA, courts are to be guided by land-based principles of tort law. *Hickman v. Jugoslavenska Linijska Plovidba Rijeka, Zvir, supra,* 570 F.2d at 451; *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, 507 (2d Cir. 1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 44 (3rd Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). This general precept has spawned a variety of more specific rules. The *Napoli* case, for example, imposed upon the shipowner a duty to the land-based employee equivalent to that owed to an invitee by a possessor of land. The court in *Ruffino, supra,* 559 F.2d at 862, applied a slightly different principle, holding that a shipowner may be liable even for a perilous condition created by a stevedore as long as the owner has actual or constructive knowledge of the danger. Then, the District Court in *Espinoza, supra,* 444 F.Supp. at 412–13, articulated a two-tier standard that this circuit has cited with approval. *See Cox v. Flota Mercante Grancolombiana, S.A., supra,* 577 F.2d at 802 n.4. According to this rule, the shipowner is liable when it has actual or constructive knowledge of dangerous conditions before stevedoring operations begin and when it has actual knowledge of dangers that arise during stevedoring. Despite differences in form, each of these rules is designed to accomplish a single goal: to prevent the shipowner from escaping liability altogether where its negligence contributed to an accident.

■ When the shipowner does not utilize a stevedore or similar intermediary but instead hires its own land-based employees directly, it becomes somewhat more difficult to determine whether an injured worker is entitled to damages or limited compensation benefits. Section 905(b) bars any damage action against the shipowner by a longshoreman, repairman, or ship builder who is injured as a result of the negligence of other employees performing similar functions. However, the legislative history of the 1972 amendments makes it clear that the rights of an employee are not dependent on who the employer is,[4] *Griffith v. Wheeling Pittsburgh Steel Corp., supra,* 521 F.2d at 43, for as one court has indicated, "the suit against the vessel owner is not to be denied because the usual scheme of structuring the employment relationships along the waterfront is not followed." *Fitzgerald v. Compania Naviera la Molinera,* 394 F.Supp. 402, 409 (E.D.La.1974).

■ Thus, in order to determine whether a shipowner-employer may be held liable for damages, a court must decide if the negligence that caused the accident was "owner occasioned." *Lubrano v. Royal Netherlands S. S. Co., supra,* 572 F.2d at 374 (Moore, J., dissenting); *Allied Towing Corp. v. Tatem,* 580 F.2d 702, 704 (4th Cir. 1978); *Smith v. M/V Captain Fred,* 546 F.2d 119, 123 (5th Cir. 1977); *Griffith v. Wheeling Pittsburgh Steel Corp., supra,* 521 F.2d at 43–44; *Napoli v. Hellenic Lines, Ltd., supra.* In other words, the key issue is whether the shipowner's employees who were at fault committed the negligent acts in their capacity as agents of the vessel on the one hand or as employees performing longshoring, ship building, or repair services on the other.

■ In the instant case, the District Court found that all of the negligent parties as well as the decedent were engaged in a single mission: that of providing repair

---

4. The House Report states:

The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor. Accordingly, the bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services.

Similar provisions are applicable to ship building or repair employees employed directly by the vessel. The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen or ship builders or repairmen as apply when an independent contractor employs such persons. 3 U.S. Code Cong. & Admin.News, p. 4705 (1972) (footnotes omitted).

services to the dredge. On this basis, the appellant's award was limited to compensation. The "single mission" analysis applied by the District Court did not entail sufficient scrutiny of the particular negligent acts that were found to have been committed.[5] The acts and omissions found to constitute actionable negligence all took place prior to the actual dive and were akin to a failure to provide a safe place to work.[6] The absence of a rescue plan, the improper placement of emergency apparatus, and the failure to provide a ladder or platform were all defects in the general operation of the tug, and it is merely fortuitous that they came to light during a dive that was part of a repair program. Furthermore, it cannot be said that the responsibility for providing a safe vessel from which to dive was at any time delegated to employees acting primarily as repairmen. Mutch, the president of Eastern, was in command throughout the operation, and may be charged with knowledge of the deficiencies that led to the accident. Although Eastern might have escaped liability if it had surrendered control over the operation to a subcontractor that could supply and supervise its own divers, that course was not chosen.[7]

Even if some portion of Eastern's negligence could be attributed to the actions of its employees acting as repairmen, it would still be liable to Smith for the full amount of his damages less that portion assignable to his own negligence. In its recent opinion in *Edmonds v. Compagnie Generale Transatlantique*, —— U.S. ——, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), the Supreme Court held that an injured harbor worker may recover fully from a negligent shipowner even if his intermediary employer was also partly at fault for the accident. The Court based this conclusion on its determination that the LHWCA was not intended to overturn the traditional admiralty rule that a negligent vessel owner and a negligent intermediary employer are jointly liable for the entire cost of an accident,

---

5. The flaw in the "single mission" analysis can be illustrated by analogy to the longshoring context. At the time that a ship is being loaded, all employees are in a sense involved at least peripherally in this single mission. Nevertheless, supervisory personnel in particular will continue to fulfill their general duties as agents of the shipowner, and the negligent discharge of these responsibilities can still result in liability to the vessel. *See, e. g., Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 509 (2d Cir. 1976); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 41–44 (3rd Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

6. With respect to the duty to provide a safe place to work, the House Report on the 1972 amendments to the LHWCA states:

Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition. 3 U.S.Code Cong. & Admin.News, p. 4704 (1972).

7. We have determined that because the negligent employees (other than Smith) were not engaged in providing repair services, § 905(b) establishes no bar to appellant's action. Thus, there is no need to decide whether the inspection performed by Smith himself was a repair service. Similarly, it is unnecessary to determine which vessel Smith was working in connection with. Indeed, this latter issue seems to be a red herring. The amendments to the LHWCA were naturally drafted in language appropriate to the most common situation: a longshoring, ship building, or repair operation taking place on a single vessel. Nevertheless, a land-based employee is no more or less entitled to sue for damages merely because his injury occurs not in the typical situation but rather in the rare circumstance where more than one vessel is involved. *Cf. Duncan v. Dravo Corp.*, 426 F.Supp. 1048, 1051–52 (W.D.Pa.1977) (repairman injured while working on barge when barge struck by tug; barge and tug both owned by repairman's employer). Where, as here, both vessels are owned by the injured worker's employer, it makes no difference which vessel the employee or the negligent party was working on when the accident occurred. The shipowner is only relieved of liability if the injury to the harbor worker resulted from negligent acts by other employees performing the same services. Thus, the relevant nexus between the negligent party and the victim is not whether they were working aboard the same vessel, but whether they were working at the same task such that both would have been employed by an intermediary employer had the shipowner chosen to contract out the work.

even if the owner is barred from seeking contribution from the employer. Moreover, the Court specifically addressed the instant situation where a shipowner is acting as its own employer, and concluded that § 905(b) continues "to permit a third-party suit against the vessel providing its own loading and unloading services when negligence in its nonstevedoring capacity *contributes* to the injury." *Id.,* —— U.S. at ——, 99 S.Ct. at 2759 (emphasis added). And the Court's ultimate holding that a shipowner is liable for the entire amount of damages appears to extend to suits against the owner in which *his* employees performing stevedoring, ship building or repair services are partially at fault, for the Court poses the issue as the proper "measure of recovery against a shipowner, *whether or not it is doing its own stevedoring,* when as shipowner it is only partially responsible for the negligence." *Id.* (emphasis added). Here there is no question that the negligence of Mutch and other Eastern employees acting as agents of the shipowner rather than as repairmen contributed substantially to the drowning.

■ Appellee also advances an argument not included in the District Court's reasoning. Eastern contends that the immunity created by § 905(b) extends to suits by all land-based personnel for injuries caused by similar employees, despite the statutory enumeration of longshoremen, ship builders, and repairmen. *See Fitzgerald v. Compania Naviera la Molinera, supra,* 394 F.Supp. at 409–10. In connection with this proposition, appellee argues that Mutch was the only one of its employees that could have been considered negligent. Thus, since Mutch was a land-based employee of Eastern and not a master or crew member of any vessel, an injury to another harbor worker resulting from his negligence cannot give rise to an action for damages. We need not now decide whether the § 905(b) exclusion applies to land-based personnel other than those in the three enumerated groups. For the exemption to apply in any event, the injured worker and the negligent employee must both have been performing the same function, whether it be longshoring, ship building, repair work, or (if appellee's construction is correct) some other task. As we have seen, although Smith was arguably doing repair work, Mutch was not. Mutch's negligent activity took place when he was serving in the capacity of supervisor on behalf of the shipowner. Had the diving work been contracted out, Smith would no doubt have been an employee of the contractor while Mutch would have been an agent of the shipowner. In that hypothetical case, Smith would have had an action against the shipowner for Mutch's negligence; so must he here, lest his rights depend arbitrarily on the employment arrangement.

■ In light of our conclusion, it is necessary to address appellant's argument concerning Smith's comparative negligence. The contention that an individual in an emergency situation is at the mercy of his rescuers and cannot be held responsible for his own carelessness might have merit where the negligent acts took place during the rescue. But here the District Court found no fault in the rescue operation itself. It was the negligence of Smith and other Eastern employees prior to commencement of the dive that caused the accident. Therefore, it is proper for the District Court to reduce the final award by the proportion of fault attributable to Smith.

Nevertheless, it is necessary to remand the case for reconsideration of the comparative responsibility of the parties. When it initially apportioned fault, the District Court had considered Smith to be an independent contractor. Viewing Smith in that posture, the District Court may have felt that he had substantial control over the diving operation. It is now agreed that Smith was acting as an employee of Eastern, and, as such, he may have been less able to dictate the conditions of his undertaking or to refuse orders to work in a dangerous environment. *See Lubrano v. Royal Netherlands S. S. Co., supra,* 572 F.2d at 374–75 (Moore, J., dissenting); *Napoli v. Hellenic Lines, supra,* 536 F.2d at 509; *see also Espinoza v. United States Lines, Inc., supra,* 444 F.Supp. at 410.

Reversed and remanded to the District Court for a determination of comparative negligence and calculation of damages.