Elizabeth SHERRY, Appellant,

v.

Alan SHERRY, Appellee.

No. 4939.

Supreme Court of Alaska.

Jan. 23, 1981.

Albert H. Branson, Branson & Guetschow, Anchorage, for appellant.

Sandra Saville, Kay, Christie, Fuld, Saville & Coffey, Anchorage, for appellee.

Before RABINOWITZ, C. J., MATTHEWS, J., DIMOND, Senior Justice, and BLAIR, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from a motion to modify a child custody agreement. The central issue in this appeal involves the appropriateness of certain conditions attached by the superior court to a voluntary dismissal pursuant to Alaska Civil Rule 41(a)(2). We have determined that the terms and conditions of the dismissal must be modified.

In 1977, after seven years of marriage, Elizabeth and Alan Sherry separated. At the outset, the parties were still amiable and agreed to a property division and child custody agreement. The terms of the custody agreement further reflected the Sherrys' willingness to cooperate with one another: Alan and Elizabeth were to have joint custody and control of the two minor children, aged five and seven. For the next eighteen months, the children changed parents each week. The divorce decree incorporated this joint custody agreement.

On November 30, 1978, Elizabeth sought to modify the custody arrangement by acquiring sole custody and control of the children. She asserted that the joint custody arrangement was no longer viable because there had been a total breakdown in communication between herself and Alan. She claimed that Alan and herself could not "share discussion about the standards of raising the children, and have been unable to agree upon the method of raising them." Elizabeth alleged that this resulted in the children being instructed and disciplined in completely different manners.

Alan opposed the motion to modify the custody agreement. He neither confirmed nor denied the alleged breach in communication between Elizabeth and himself, but simply maintained that the children were happy and healthy with the joint custody arrangement and thus that no modification was indicated.[1]

On December 18, 1978, in response to Elizabeth's motion, the superior court ordered Francis Stevens, Court Custody Eval-

---

1. Alan also moved that sole custody be vested in himself if the court determined that joint custody would not be in the best interests of the children.

uator, to evaluate both parties, the children, and Robert Baldwin, Elizabeth's husband.[2] In March, the trial date was set for August 13, 1979, with all discovery to be completed by that date. On April 11, 1979, the parties stipulated to a psychological examination of themselves and of the children by Dr. Wandal Winn. It is unclear from the record whether Dr. Winn conducted the examinations.

In early July, Alan submitted his witness list with Dr. Winn included. But on July 9, Dr. Winn informed Max Gruenberg, Elizabeth's attorney, that he was withdrawing from the case. Gruenberg then began searching for a qualified psychologist to examine the parties and the children. In the meantime, Elizabeth submitted a witness list which included a psychologist or psychiatrist to be named later. On July 25, nineteen days before trial, Elizabeth moved the court to appoint two California psychologists to examine the parties and the children. After a hearing, the superior court denied Elizabeth's motion on the grounds that no need for a psychological examination had been shown and that the appointment of expert witnesses so close to trial would cause delay. Thereafter, Elizabeth moved for a two-month continuance to alleviate any possible prejudice to Alan caused by the appointment of the psychologists. This motion was also denied.

Since Elizabeth considered the psychological testimony essential to her case, she moved for a voluntary dismissal without prejudice pursuant to Alaska Civil Rule 41(a)(2).[3] Alan opposed dismissal unless conditioned upon certain terms. In a subsequent hearing the superior court, over Elizabeth's objections, granted dismissal without prejudice subject to the following conditions:

1. A specific finding is made that it is presently in the best interest of the children to remain in the joint custody situation of equal physical custody with each parent.

2. A specific finding is made that the children are presently healthy, happy and well cared for.

3. That no psychological or psychiatric examination be had without the consent of both parents or an order of the court upon a showing that there is need for such examination.

4. That no motion to modify custody may be filed in this case for a period of two (2) years absent a showing of extraordinary reason for allowing such a motion to be filed.

5. That if the parties cannot agree as to which school the minor child, Jennifer, shall attend in the fall, they may submit such issue to this court for decision at another hearing.

6. That if either party moves from the state of Alaska, physical and legal custody shall remain with the party staying in Alaska.

7. That the Defendant is hereby awarded one-half or $1,952.63 of his actual costs and attorney's fees which have been calculated to be $1,331.25 for Mr. Sherry's services, $2,574.00 for Ms. Saville's law firm's services.

 Elizabeth appeals to this court from the superior court's grant of her motion to dismiss, alleging that the imposed conditions of the dismissal constitute an abuse of discretion on the part of the superior court.[4]

---

**2.** Alan, an attorney, represented himself at the outset of the proceedings. On December 21, 1978, Sandra Saville entered an appearance in behalf of Alan Sherry. The record shows that Ms. Saville commenced billing Alan on December 6, 1978.

**3.** Alaska R.Civ.P. 41(a)(2) reads in relevant part:

> (2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule [dealing with dismissal prior to answer,

or by stipulation of the parties], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

**4.** Generally, a plaintiff cannot appeal from a grant of a motion to dismiss without prejudice. 5 W. Moore, Federal Practice ¶ 41.05[3], at 41–79 (2d ed. 1980). The plaintiff may, of course,

## I

Initially we deem it appropriate to review the general concepts and principles surrounding voluntary dismissals. The purpose of a Rule 41(a)(2) dismissal is "to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976). In deciding such a motion, Alaska courts are to balance the interests of "both the plaintiff and the defendant in the dismissal in order to obtain a result which will be fair and equitable under all the circumstances of the case." *Dome Laboratories v. Farrell*, 599 P.2d 152, 156 (Alaska 1979) (footnote omitted).[5] The mere fact that a party will be faced with another lawsuit does not of itself constitute prejudice. *Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19, 56 S.Ct. 654, 659, 80 L.Ed. 1015, 1022–23 (1936); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 80 F.R.D. 103, 106 (S.D.N.Y.1978); *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 15 F.R.D. 14, 18 (S.D.N.Y.1953). A dismissal without prejudice "render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought." *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213, 219 (8th Cir. 1977); 5 J. Moore, *Federal Practice* ¶ 41.05[2], at 41–76 (2d ed. 1980). Allowing the court to condition the dismissal upon certain terms prevents defendants from being unfairly affected by such dismissal. *Dome Laboratories v. Farrell*, 599 P.2d 152, 159–60 (Alaska 1979); C. Wright & A. Miller, *Federal Practice and Procedure* § 2364, at 165, 171 (1971). In a very early interpretation of the Federal Rule 41(a)(2) it was stated:

When the Supreme Court promulgated this rule and provided that the court might permit a dismissal without prejudice 'upon such terms and conditions as the court deems proper' what sort of 'terms and conditions' was contemplated? I have found nothing in the books upon which to base an answer, but no 'terms and conditions' are conceivable except such as are calculated to compensate the defendant for the expense to which he has been put.

*McCann v. Bentley Stores Corp.*, 34 F.Supp. 234, 235 (W.D.Mo.1940). *See also Welter v. E. I. DuPont de Nemours & Co.*, 1 F.R.D. 551, 553–54 (D.Minn.1941) (purpose of Rule 41(a)(2) in requiring plaintiff to comply with the "terms and conditions" set by the court is to protect the defendant from economic prejudice). In the more recent case of *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604–05 (5th Cir. 1976), the court held that the only proper conditions were those which would alleviate the harm caused to the defendant.

In the case at bar only one of the conditions, the award of attorney's fees, serves to cure the practical and economic prejudice caused by the dismissal. As noted previously, the functional effect of the other conditions is to create a dismissal with prejudice. The dismissal in question does not "leave the parties as if the action had never been brought." To the contrary, the probability of Elizabeth's effecting a custody modifica-

---

appeal from a dismissal with prejudice. *See Durham v. Florida E. Coast Ry. Co.*, 385 F.2d 366 (5th Cir. 1967). Although a dismissal is labeled as without prejudice, it may have the opposite effect. The appealability of an order depends on its effect rather than its language. *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976). The conditions imposed by the court in the case at bar in conjunction with its grant of a voluntary dismissal had the effect of making the dismissal one with prejudice and, thus, appealable.

5. In reaching the decision whether or not to grant a motion for voluntary dismissal, the trial court should consider factors such as whether the defendant has filed an answer and has gone to great expense in preparing for trial; how long the action has been pending; whether or not the plaintiff has been diligent; whether adequate reasons have been advanced for the dismissal; whether the motion is made after the defendant has moved for summary judgment and in order to avoid summary judgment against the plaintiff; and whether the trial court has spent substantial time familiarizing itself with the action.
*Dome Laboratories v. Farrell*, 599 P.2d 152, 156 (Alaska 1979) (footnotes omitted).

tion has been narrowed considerably by the terms of the dismissal.[6]

Elizabeth specifically objects to conditions (1) and (2), the findings of fact, because no fact-finding took place. Since the case never went to trial, no testimony was heard, and no evidence was presented, there existed no evidentiary basis for questioned factual findings. We agree and conclude that no findings of fact should be made in conjunction with a voluntary dismissal when the superior court has no evidentiary basis for such findings. As to conditions (3) and (4), they require that no motion to modify the custody decree be made for two years and that no psychological or psychiatric examination be had without consent of both parents. We hold it an abuse of discretion to have required that no motion for modification be filed for two years. No doubt, the superior court was seeking to force the parties to attempt to work out any custody disputes on their own for this period and to protect the interests of the parties' minor children. However, it is impossible to tell what new circumstances may arise that might require modification. A parent should have recourse to the court to apprise the court of circumstances he or she thinks may warrant modification. Further, we think that the court's prohibition on psychological or psychiatric examinations is also inappropriate and an abuse of discretion in the context of a voluntary dismissal, since it seeks to alter the rights of the parties and thus prejudices them.

Condition (5), which provides "[t]hat if the parties cannot agree as to which school the minor child, Jennifer, shall attend in the fall, they may submit such issue to this court for decision at another hearing," is within the court's power and not an abuse of discretion since it focuses on an important problem that has arisen and may later need judicial resolution. This condition does not alter the pre-existing rights of the parties.

Condition (6) provides that "if either party moves from the state of Alaska, physical and legal custody shall remain with the party staying in Alaska." Removal of the children from the state should not automatically shift custody without a hearing. Thus we conclude a more appropriate provision is to condition removal of the parties' minor children from the state of Alaska upon prior approval of the superior court.

## II

Condition (7) embodies the superior court's award of attorney's fees. Elizabeth contends that the superior court erroneously awarded attorney's fees under the Civil Rule 82 "prevailing party" test.[7] She argues that the award of attorney's fees in domestic relations cases is governed by AS 09.55.200(a)(1), which permits, but does not compel, the superior court to order "that one spouse pay an amount of money as may

6. Thus, on June 19, 1980, we issued an order vacating and modifying some of the superior court's conditions of the voluntary dismissal.

7. Alaska R.Civ.P. 82(a) provides:
 (a) *Allowance to Prevailing Party as Costs.*
 (1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

 ATTORNEY'S FEES IN AVERAGE CASES

 | | | Contested | Without Trial | Non-Contested |
 |---|---|---|---|---|
 | First | $2,000 | 25% | 20% | 15% |
 | Next | $3,000 | 20% | 15% | 12.5% |
 | Next | $5,000 | 15% | 12.5% | 10% |
 | Over | $10,000 | 10% | 7.5% | 5% |

 Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as part of the costs of the action, in its discretion, in a reasonable amount.

 (2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

 (3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

be necessary to enable the other spouse to prosecute or defend the action." [8]

Our review of the record reveals no reference by the superior court to the Rule 82 "prevailing party" test. Further, there are indications that the superior court employed the AS 09.55.200(a)(1) test, which requires the parties' relevant economic situations and earning powers to be weighed in determining whether to order payment of attorney's fees. *Burrell v. Burrell*, 537 P.2d 1, 7 (Alaska 1975). Regardless, the superior court clearly had discretion to award costs and attorney's fees as a condition of the dismissal. *Dome Laboratories v. Farrell*, 599 P.2d 152, 160 (Alaska 1979); *Miller v. Wilkes*, 496 P.2d 176, 178 (Alaska 1972), *overruled on other grounds, R. A. Davenny & Associates, Inc. v. Shinjin Motor Sales Co., Ltd.*, 533 P.2d 1112 (Alaska 1975).

Elizabeth next contends that it was error to award fees based on Alan's legal efforts in the case. She maintains that an attorney-litigant who defends an action through retained counsel should not be reimbursed for his own participation. She analogizes this situation to that in *Continental Insurance Co. v. United States Fidelity & Guaranty Co.*, 552 P.2d 1122 (Alaska 1976), in which we denied an award of attorney's fees for the efforts of in-house counsel who did not actively participate as counsel in the litigation. *See Greater Anchorage Area Borough v. Sisters of Charity*, 573 P.2d 862 (Alaska 1978). Elizabeth objects primarily to Alan's charges for conferences with his counsel, Ms. Saville. Elizabeth contends this represents merely earnings Alan might otherwise have had had he not been involved in the litigation. She notes that most of Alan's charges are for his own services after he had retained Ms. Saville.

Alan responds that he prepared many of the documents and that the time he expended as counsel in the matter was a burden which was appropriate for reimbursement under the broad discretion supplied the superior court by Rule 41(a)(2). Furthermore, Alan notes that the superior court could have awarded all of Ms. Saville's charges, a sum which would have exceeded the actual award.

There are serious problems in awarding fees for time an attorney-litigant spends conferring with his or her retained counsel. An attorney-litigant, by virtue of his profession, could characterize himself as co-counsel and recover for time spent in conference with his attorney, while a layman, also conferring with counsel over trial tactics and witnesses, could not recover. Furthermore, numerous conferences between attorney and client are often warranted in child custody disputes, where the ultimate determination hinges upon factual issues more familiar to the client than the attorney. In these conferences it was not Alan's legal training that required his participation but his intimate knowledge of his children, his ex-wife, and the family friends who would testify in his behalf. We therefore conclude that if the court wished to award attorney's fees for Alan's time it should have done so only after making a clear segregation of his compensable time, expended as an attorney active in the litigation, and his noncompensable time, expended as client.[9]

The superior court's dismissal order is modified in accord with this opinion and the matter remanded for proceedings not inconsistent with this opinion.

---

**8.** AS 09.55.200 provides in part:

*Orders during action.* (a) During the pendency of the action, the court may provide by order

(1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action; . . .

**9.** By virtue of the vacation of conditions (3) and (4), Elizabeth may again bring a petition for modification of the present custody arrangement. Elizabeth is not restricted by this subject dismissal from requesting a psychological or psychiatric examination in furtherance of such a motion. Thus, it is not necessary for us to determine whether, as Elizabeth claims, the superior court committed error in its denial of her motion to appoint a psychologist to examine the children.