Jeffrey Neal **BOVEE**, Appellant,

v.

Donald **LaSAGE**, Appellee.

No. 6527.

Supreme Court of Alaska.

May 13, 1983.

---

Arthur L. Robson, Fairbanks, for appellant.

Ralph R. Beistline, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

Jeffrey Bovee appeals a judgment entered by the superior court dismissing with prejudice his suit against Donald LaSage, a Fairbanks police officer, and awarding LaSage costs and attorney's fees. The suit was based upon allegations that LaSage used excessive force in restraining Bovee during the course of an arrest. It was dismissed during trial at Bovee's request.[1]

On appeal, Bovee claims the superior court coerced him to move for dismissal of the suit, and thus that the judgment was essentially granted *sua sponte,* becoming either an involuntary dismissal under Alaska R.Civ.P. 41(b),[2] or summary judgment, under Alaska R.Civ.P. 56(b).[3] Bovee con-

---

1. Alaska R.Civ.P. 41(a) governs the voluntary dismissal of actions. Alaska R.Civ.P. 41(a)(2), which governs voluntary dismissal by order of the court, states in full:

   Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

2. Alaska R.Civ.P. 41(b) governs the involuntary dismissal of actions, and states in full:

   For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presenta-

tion of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

3. Alaska R.Civ.P. 56(b) states:

   A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move for a summary judgment in his favor as to all or any part thereof.

tends that such a dismissal improperly deprived him of an opportunity to litigate his claim. He also challenges as excessive the superior court's grant to LaSage of $5,577.93 in costs and attorney's fees. Bovee additionally claims that the superior court unreasonably restricted his opportunity to question jurors on *voir dire.*

## FACTS

The incident which gave rise to this suit occurred on March 19, 1979, in the early morning hours, during a confrontation at the College Inn Grocery in Fairbanks. Bovee was about to enter the College Inn Grocery to purchase some ice cream, when Officer Layman, of the Fairbanks police, approached him and requested that he remain outside. Layman had observed Bovee driving just prior to his arrival at the grocery store, and considered his conduct sufficiently suspicious to warrant further investigation. Bovee disregarded the command, entered the store and walked toward the freezer. Layman followed him and asked to see his driver's license. When Bovee failed to comply, Layman asked him to go outside. Bovee refused, demanding witnesses. Layman called on Cadet Veith, who was waiting in the patrol car, for assistance. Veith and Layman unsuccessfully attempted to remove Bovee from the store.

Officer LaSage heard Layman's radio call for assistance and reached the College Inn Grocery while the three men were struggling inside. LaSage entered the store and proceeded to assist Layman and Veith in their attempts to remove Bovee from the store premises. In so doing, LaSage grabbed Bovee's right arm and in the course of attempting to place Bovee's arm behind his back struck Bovee in the head with his (LaSage's) elbow. Bovee was then handcuffed. His watchband was bent during the handcuffing episode. Bovee admitted that he did not know which of the three officers placed the handcuffs on him or who had bent his watch. He was frisked, given a pat-down search, and placed in Layman's patrol car. Bovee did not see LaSage again. Bovee did not seek or receive medical attention for injuries allegedly sustained during the arrest.

Bovee subsequently filed suit against LaSage for use of excessive force, seeking actual and punitive damages for injuries sustained during the arrest.[4] The case went to trial before a six-person jury. Counsel initially conducted *voir dire,* questioning the jurors individually. The superior court, without objection, completed the *voir dire* in an effort to expedite the impaneling of the jury.

After counsel completed their opening statements, Bovee's counsel informed the court that two witnesses were not yet available. The court suggested that either Bovee or LaSage testify, since both were present at that time. Bovee then testified. After direct and cross-examination of Bovee was completed, the jury was given a recess.

Out of the presence of the jury, the trial judge apprised Bovee and his trial counsel that Bovee would be liable for LaSage's actual costs and attorney's fees if his case was no stronger than that established by his own testimony.[5] The superior court then

4. The suit was originally filed on behalf of four plaintiffs, including Bovee, against LaSage and the City of Fairbanks. The allegations arose out of separate incidents, and the case was severed at the defendants' request. The other three cases were dismissed. On July 13, 1981, the superior court granted a motion to dismiss Bovee's claim against the City and denied Bovee's motion to name Officer Layman as an additional party defendant. None of these rulings are challenged in this appeal.

5. The court's statement, in full, was as follows:
THE COURT: Mr. Bovee, I told your counsel a month ago if facts came out as indicated in Mr. Beistline's memorandum that when this case was over with I'd assess actual costs. I don't know what Mr. Beistline's hourly rate is, but I can assure you, in excess of $100.00 an hour. Based on your own testimony in this case at this stage, it's unlikely to me the case is going to get better than your own testimony. But even if the jury should find liability and damages, which I find impossible to believe, I'd be forced to turn the verdict around after the verdict came around, just based on your testimony. And when that happens, I will award actual costs and fees, including attorneys fees, as I'd have to make a finding that this is a frivolous lawsuit. So,

recessed to permit Bovee to decide whether he wished to proceed with the trial in light of the probable expense of doing so. After the recess, and in the absence of the jury, Bovee's counsel expressed a decision not to pursue the action, indicating that he felt "constrained" to do so by the possibility of incurring substantial liability for costs and attorney's fees. The superior court reiterated that Bovee was free to proceed, and that its appraisal of the merits of Bovee's case, which had also been given to Bovee's counsel at a pretrial conference, was not tantamount to a dismissal, but merely intended to permit Bovee to avoid unnecessary expenditures. Bovee's counsel responded that he "appreciate[d] that," but had concluded that "the only wise thing to do at this point is simply to fold our tents." Thereafter, Bovee moved to dismiss the action. After another recess, counsel for LaSage indicated his non-opposition to the motion to dismiss with prejudice and it was granted. The superior court subsequently awarded LaSage $577.93 in costs and $5,000 in attorney's fees.[6]

## THE NATURE OF THE DISMISSAL

On appeal, Bovee attempts to characterize the voluntary abandonment of his claim during trial as an involuntary dismissal effected at the instance of the superior court. He argues that the trial judge coerced him to move for a dismissal and that the propriety of that action should be gauged in accordance with standards governing rulings on motions for summary judgment and involuntary dismissal.

We are not persuaded by Bovee's contention that the superior court coerced the dismissal. Before accepting Bovee's motion, the superior court made it clear that he was free to pursue his claim, and simply informed him of the costs he might incur in pursuing it any further. In response to a statement by Bovee's counsel that his client felt constrained, under the circumstances, to move for a dismissal, the superior court stated:

> The record should reflect that I relayed the same information a month ago, before we got to this stage, and I didn't relay it at this stage for any other reason than to try to save Mr. Bovee some money, which I could see was coming. So, if you want to classify that as a constraint, that's up to you one way or the other. But—you know—I'm certainly not preventing you from proceeding and trying to win in front of the jury, and win on appeal if you want to. I just want to let him know where it stands right now, so he doesn't have to spend the money.

Counsel for Bovee responded:

> Appreciate that. We did discuss it at the time before. We were not in a situation where we currently are, and where the Court has had the advantage of hearing the things—you know—hearing the case, and set this up, and so I think the only— the only wise thing to do at this point is simply to fold our tents.

Formalizing his motion, counsel for Bovee concluded:

> if you want to continue, that's up to you, but I can almost give you a guaranty it's going to cost you at least $100.00 an hour to do that. But it's up to you. We'll recess.

6. On August 19, 1981, LaSage moved for $8,020.00 in attorney's fees. The accompanying memorandum stated that this sum represented legal fees incurred between August 27, 1980, when Bovee's deposition was taken, and August 13, 1981, two days after dismissal of the action. Of this amount, $3,280.00 represented fees incurred between July 13, 1981, the date of the pretrial conference, and August 13, 1981. LaSage submitted a Bill of Costs totalling $577.93.

Bovee opposed the statement of costs and attorney's fees on the ground that a portion thereof pertained to fees incurred in defending against the claims asserted by his original co-plaintiffs. However, LaSage had reduced the Bill of Costs to $444.93 to eliminate such expenditures on August 28, 1981, three days before Bovee submitted his opposition to LaSage's motion for costs. Similarly, on September 9, 1981, counsel for LaSage submitted a supplemental affidavit eliminating $902.00 in fees which pertained to "work done in the *Bovee* case but ... also related to [the] three other claims previously filed against Donald LaSage." Thus, LaSage ultimately demanded $7,018.00 in attorney's fees, and $444.93 in costs. Judge Blair granted $5,000 in attorney's fees and $577.93 in costs, failing to take note of the corrections in the Bill of Costs.

If it is a matter of semantics, your Honor, based on the constraints indicated, we will move for the dismissal, yes.

■ In accordance with the dictates of Civil Rule 41(a)(2),[7] the court properly inquired into LaSage's position on the motion before making its ruling, ensuring that its order would rest upon such terms and conditions as justice required. *See Sherry v. Sherry,* 622 P.2d 960, 964 (Alaska 1981); *Dome Laboratories v. Farrell,* 599 P.2d 152, 156 (Alaska 1979). Since LaSage had no objection to the motion, the superior court dismissed Bovee's claim for relief with prejudice.[8] We will only disturb a trial court's decision to grant a Civil Rule 41(a)(2) motion for dismissal if it is shown that the superior court failed to exercise or abused its discretion, or exercised an unpermitted discretion. *Dome Laboratories,* 599 P.2d at 156. From the record before us, we hold that the superior court did not err in granting the Civil Rule 41(a)(2) dismissal.[9]

### COSTS AND ATTORNEY'S FEES

Bovee contests the superior court's award of costs and attorney's fees to LaSage on three grounds. First, he claims that a portion of the sum pertained to expenditures made by LaSage in defending against suits pursued by his original co-plaintiffs, which were severed from, and thus unrelated to, his own cause of action. Second, Bovee contends that a portion of LaSage's defense was conducted by the City of Fairbanks, that the court held Bovee liable for expenses for these services as well, and that pursuant to *State v. Fairbanks North Star Borough School District,* 621 P.2d 1329 (Alaska 1981), such an award of attorney's fees for duplicate work was impermissible. Third, Bovee argues that since the court could not justifiably have made a finding that his case was frivolous after hearing only a portion of his case, an award of partial rather than full attorney's fees was in order.

Alaska R.Civ.P. 82 governs the award of attorney's fees in this case. Since Bovee's suit was dismissed with prejudice, LaSage was the prevailing party within the meaning of Alaska R.Civ.P. 82.[10] It is well-settled that a trial court's discretion in awarding attorney's fees under Civil Rule 82 will be interfered with only when manifestly unreasonable. *F/V American Eagle v. State,* 620 P.2d 657, 673 (Alaska 1980); *Alaska Placer Co. v. Lee,* 553 P.2d 54, 63 (Alaska 1976).

---

**7.** Alaska R.Civ.P. 41(a)(2) is set out at n. 1, *supra.*

**8.** The dialogue, in full, went as follows:
MR. BEISTLINE (counsel for LaSage):
Yes, your Honor, we don't—we don't oppose the motion to dismiss with prejudice. We've had some discussions among ourselves about attorney's fees, and that hasn't been resolved yet.
THE COURT:
Very well. Anything further at this time, then?
MR. ROBSON (counsel for Bovee):
I concur with what Mr. Beistline has said, your Honor.
THE COURT:
Very well. The motion to dismiss with prejudice will be granted.

**9.** The record does not support Bovee's contention that the warning regarding potential liability was tantamount to a coerced dismissal. Thus, we find inapposite cases Bovee relies upon in contesting the ruling, as they established criteria to be used in determining the propriety of an involuntary dismissal at the request of a defendant, rather than a voluntary dismissal obtained pursuant to Civil Rule 41(a).

**10.** LaSage was under the misconception that cases voluntarily dismissed under Alaska R.Civ.P. 41(a)(2) did not entitle an opposing party to attorney's fees under Civil Rule 82. This is incorrect. Cases voluntarily dismissed without prejudice cannot give rise to a claim under Civil Rule 82 because there is technically no prevailing party. Thus, any award of fees in these instances is made pursuant to the court's authority under Civil Rule 41(a)(2) to condition a dismissal on terms it deems just. We have upheld such rulings on several occasions. *See Sherry v. Sherry,* 622 P.2d 960, 964 (Alaska 1981); *Dome Laboratories v. Farrell,* 599 P.2d 152, 159–60 (Alaska 1979); *Miller v. Wilkes,* 496 P.2d 176 (Alaska 1972).

However, a dismissal with prejudice operates as an adjudication on the merits. *Miller v. Johnson,* 370 P.2d 171, 173 (Alaska 1962). Thus, it is possible to make a "prevailing party" determination for purposes of applying Civil Rule 82 if a case is dismissed with prejudice pursuant to Alaska R.Civ.P. 41(a)(2).

■ Bovee's first claim rests on the correct premise that only fees and costs incurred by LaSage in defending against his cause of action should be awarded under Alaska R.Civ.P. 79(b) and 82. As we observed in *Alaska State Housing Authority v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978), "Civil Rule 82 only applies to 'costs of the action' not attorney's fees incurred in the conduct of a prior arbitration" or unrelated proceeding. Similarly, Civil Rule 79(b) characterizes "items allowed as costs" as "expenses necessarily incurred in order to enable a party to secure some right accorded him *in the action or proceeding.*" (Emphasis added.) Bovee's challenge to the award of costs is well-taken. The trial court's award of $577.93 failed to reflect the deletions made by LaSage in eliminating expenses incurred in his defense against other actions. These alterations reduced the Bill of Costs to $444.93. The judgment should be reduced accordingly.

■ The record does not indicate whether the trial judge considered the supplemental affidavit submitted by counsel for LaSage which reduced his demand for attorney's fees from $8,020 to $7,018, eliminating expenses incurred in defending against the other actions. In any event, his award of $5,000 was substantially less than both sums, and did not constitute an abuse of discretion.

■ Bovee also contends that he is being charged for work already billed to the City of Fairbanks, alleging that this is impermissible under *State v. North Star Borough,* where we observed that "to the extent that work performed is duplicative and unnecessary, it should not be considered in determining a proper award under Civil Rule 82." 621 P.2d at 1335. However, we then rejected that claim in *North Star Borough* because it was not supported by any concrete examples from the record, or otherwise. Similarly, in the absence of any specific evidence in support of Bovee's allegations, we conclude that he has failed to meet his burden of showing a clear abuse of discretion by the superior court.[11]

Finally, Bovee claims that an award of "full" attorney's fees was improper. Since the purpose of Civil Rule 82 is to compensate partially the prevailing party for costs and fees incurred in litigation, *Malvo v. J.C. Penney Co.*, 512 P.2d 575, 588 (Alaska 1973), we have previously held that full reimbursement is appropriate only if the claim raised by the losing party is "frivolous, vexatious or devoid of good faith." *State v. University of Alaska*, 624 P.2d 807, 818 (Alaska 1981). *See also Davis v. Hallett,* 587 P.2d 1170, 1171–72 (Alaska 1978); *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 587 (Alaska 1973). However, in light of the fact that the trial court did not award LaSage the entire $7,018.00 he requested in attorney's fees, we find it unnecessary to consider the merits of Bovee's contention that the court could not have found his claim "frivolous" before he had presented his entire case.

In sum, we conclude that the superior court did not abuse its discretion in awarding LaSage $5,000 in attorney's fees, but remand for redetermination of the award of costs in accordance with the reductions noted on the Bill of Costs.

### SELECTION OF THE JURY

We decline to consider the merits of Bovee's claim that the superior court erred in limiting questioning by counsel. No objection was made at the time the court undertook to question remaining jurors, and the issue is raised for the first time on appeal. Therefore, it is not properly before us. *Wickwire v. McFadden,* 633 P.2d 278, 281 n. 6 (Alaska 1981).

Furthermore, the jury took no part in the disposition of the case, since it was dismissed by the superior court upon Bovee's

11. Bovee alleges on appeal that the City of Fairbanks paid for LaSage's defense until the pretrial conference. Only $3,280.00 in attorney's fees was incurred by LaSage after that date, and Bovee contends his liability should be limited to that sum. However, this claim was not raised below, and there is no evidence in the record that supports Bovee's allegation. For this reason, we disregard it.

request. Given our holding that the dismissal was not coerced, it is unnecessary to address the merits of this claimed error.

AFFIRMED in part, REVERSED in part, and REMANDED.

MATTHEWS, Justice, concurring in part and dissenting in part:

In my view Bovee's testimony established a prima facie case that LaSage used more force than was reasonable in effecting Bovee's arrest. In making such a determination the court was required to view his testimony in a light most favorable to him and to draw every reasonable inference therefrom to the benefit of his case. *Correa v. Stephens,* 429 P.2d 254, 256 (Alaska 1967).

Bovee, a man 5'6" tall and weighing 155 pounds, was physically resisting being removed from a store by two police officers when Officer LaSage arrived on the scene. LaSage grabbed Bovee's right arm and attempted to pin it behind his back, at which point Bovee went rigid. LaSage then struck Bovee on the temple with his elbow. This dazed Bovee so he "pretty much gave in." LaSage then pushed Bovee's arm high up beyond his back, forcing Bovee up on his toes. When Bovee complained that LaSage was "really straining" his arm, LaSage cursed and said he didn't care if he broke it. The officer then pushed Bovee face down onto the floor and placed handcuffs on his wrists. They then rolled Bovee onto his back and LaSage frisked him while another officer knelt on Bovee with one knee on his neck and the other in his stomach, so that Bovee had difficulty in breathing.

I agree that as to LaSage the fact that there may not have been cause for Bovee's arrest is not relevant. LaSage was summoned to aid fellow officers in making an arrest and it was not his duty to inquire first whether it was justified. Nonetheless, LaSage had a duty to use no more force than was reasonably needed to effect Bovee's arrest. A reasonable juror could have concluded, in my opinion, that the line between reasonable and excessive force was crossed in this case.

However, the fact that the trial court erred in determining and announcing that a prima facie case did not exist does not mean that Bovee can obtain appellate review of this error. A party who consents to a judgment waives his right to appeal from it. 9 J. Moore, B. Ward & J. Lucas, Federal Practice ¶ 203.06, at 3–27 (1982). The fact that such consent may have been prompted by an erroneous adverse ruling has not been regarded as cause sufficient to justify relief from this rule. *See Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd,* 503 F.2d 1193, 1199 (10th Cir.1974); *Stewart v. Lincoln-Douglas Hotel Corp.,* 208 F.2d 379, 381 (7th Cir.1954). We have recognized an exception to this rule in criminal cases. An appeal may be taken from interlocutory rulings preceding a plea of guilty where the right to appeal is expressly reserved and the parties stipulate with court approval that the issue reserved for appeal is dispositive. *Oveson v. Municipality of Anchorage,* 574 P.2d 801, 803 (Alaska 1978). However, that exception has not been extended to civil cases. Further, Bovee did not attempt to reserve his appellate rights. I conclude, therefore, that by agreeing to a dismissal of his case, Bovee has waived his right to contest on appeal the actions of the trial court that led to the dismissal.

Although this result may be seen as harsh, litigation is not always easy. When a case goes awry because of arguably erroneous rulings of the trial judge, a difficult choice between continuing to litigate in the hope of obtaining relief on appeal or dropping the case must be made. Bovee chose the latter alternative rather than the former, and they are mutually exclusive.

I agree with the majority opinion that the judgment with respect to costs must be reduced. I would remand the award of attorney's fees for redetermination since the court may have premised the award on its erroneous determination that Bovee's case was frivolous.