ALYESKA PIPELINE SERVICE
COMPANY, INC., Appellant,

v.

Robert BEADLES, Appellee.

Robert BEADLES, Appellant,

v.

ALYESKA PIPELINE SERVICE
COMPANY, INC., Appellee.

Nos. S-1459, S-1501.

Supreme Court of Alaska.

Jan. 23, 1987.

Rehearing Denied Feb. 27, 1987.

Marcus R. Clapp and John V. Acosta, Hughes, Thorsness, Gantz, Powell and Brundin, Fairbanks, for Alyeska Pipeline Service Co.

Arthur Lyle Robson, Fairbanks, for Robert Beadles.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Robert Beadles was injured on August 8, 1981, while working at Pump Station Two of the Alaska Pipeline. Shortly after the accident, Beadles began to receive worker's compensation benefits from his employer, Northland Maintenance Company. He subsequently filed a negligence action against Alyeska Pipeline Service Company, Inc. (Alyeska), asserting that Alyeska was liable for his injuries and requesting punitive damages for its alleged reckless disregard for the safety of others. Alyeska filed a motion for summary judgment on the issue of punitive damages, which the superior court granted.[1] The jury ultimately found Alyeska liable and returned a verdict of $270,918.00 for Beadles. Beadles now appeals from the superior court's denial of his motion for a new trial; its grant of summary judgment on his claim for punitive damages; and its disallowance of certain claimed costs. Alyeska appeals from the superior court's calculation of costs and attorney's fees under Civil Rule 68.[2]

1. The court denied Beadles' motion for reconsideration. Beadles then filed a petition for review of the superior court's grant of summary judgment to Alyeska on his claim for punitive damages. This court denied the petition.

2. These separate appeals were consolidated.

## I. THE SUPERIOR COURT'S DENIAL OF A NEW TRIAL.

Beadles' primary contention here is that the superior court erred in refusing to grant a new trial because the jury's verdict of $270,918.00 was below the sum of Beadles' estimated past lost wages and his medical expenses.[3]

The grant or denial of a motion for a new trial rests in the sound discretion of the trial court. We will not interfere with the trial court's discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. *Ahlstrom v. Cummings*, 388 P.2d 261, 262 (Alaska 1964). A motion for new trial will be granted "where the evidence to support the verdict is completely lacking or is so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 724 (Alaska 1975), *vacated on other grounds*, 552 P.2d 157 (Alaska 1976), *quoting Ahlstrom*, 388 P.2d at 262. If there is an evidentiary basis for the jury's decision, denial of the motion for a new trial will be affirmed. *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978). Here we conclude that the superior court did not abuse its discretion in denying Beadles' motion for a new trial.

Our review of the record does not lead us to believe that the evidence supporting the jury's damage award is so lacking as to make the award plainly unreasonable and unjust. The evidence indicated that Beadles' lost wages up to the time of trial totaled $201,914.00. Witnesses testified that Beadles had the capacity to become a vocational education instructor, engineer, or other related professional, and that he was a highly competent individual. Given the evidence as to lost wages and the stipulated amount of $29,813.24 of medical expenses, it is clear that the jury's determi-

3. Three expert witnesses testified at trial as to the amount of Beadles' lost wages. The parties stipulated that Beadles' medical expenses totaled $29,813.24.

nation of damages fell within the range of the evidence presented.[4]

## II. THE SUPERIOR COURT'S GRANT OF ALYESKA'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES.

■ By granting Alyeska's motion for summary judgment on the issue of punitive damages, the superior court ruled that Beadles was not entitled to recover such damages against Alyeska. We recently faced a similar issue in *Hayes v. Xerox,* 718 P.2d 929 (Alaska 1986). There we upheld the superior court's order granting summary judgment and explained in part:

> [I]n order to recover punitive damages "the plaintiff must prove that the wrongdoer's conduct was 'outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.' Actual malice need not be proved." *Strum, Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979), *modified* 615 P.2d 621 (Alaska 1980), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *overruled on other grounds, Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985), *quoting* Restatement (Second) of Torts § 908 (Tent. Draft No. 19, 1973). Conscious action in " 'deliberate disregard of [others] ... may provide the necessary state of mind to justify punitive damages.' " *Id.* If the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, then the trial court need not submit the issue of punitive damages to the jury. *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 774 (Alaska 1982) (citations omitted).

*Id.* at 934–35. In *Ross Laboratories v. Thies,* 725 P.2d 1076, 1081 (Alaska 1986), *quoting in part Alaska Placer Co. v. Lee,* 553 P.2d 54, 61 (Alaska 1976), we reiterated that "punitive damages are a harsh remedy 'not favored in law.' "

In reviewing the superior court's grant of summary judgment on the issue of punitive damages, we must ascertain whether any genuine issue of material fact exists; if not, Alyeska accordingly is entitled to judgment as a matter of law. *See Riley v. Northern Commercial Co., Mach. Div.,* 648 P.2d 961, 965–66 (Alaska 1982). Our review of the record discloses no basis for a punitive damage claim against Alyeska.[5]

---

4. Beadles speculates that the low damages award might have been caused by the superior court's failure to explicitly inform the jury of the amount he would be required to pay back to his worker's compensation carrier. We are not persuaded that this theory requires reversal of the superior court's denial of his motion for a new trial. The superior court instructed the jury in part that:

> [T]he whole matter of insurance or Workers' Compensation is to be disregarded by you entirely throughout the trial and during your deliberations. And whether there was or was not Workers' Compensation is irrelevant to the trial and the law has ways of working this through after the verdict, but it does not concern jurors at all.

Subsumed in Beadles' specification of error as to the trial court's denial of his motion for a new trial is the contention that the superior court erred in not granting additur. The United States Supreme Court has held that the Seventh Amendment prohibits the use of additur. *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Were we to construe article I, section 16 of the Alaska Constitution (which preserves the right to a jury trial for cases in which the controversy exceeds $250, to the ex-

tent that the right existed at common law) as permitting additur, we would nevertheless conclude that there is no basis in the record which would warrant invocation of this remedy.

5. Beadles' accident occurred when he and two Alyeska employees, Rod Pugh and Steve Pohl, were attempting to close a stuck pipeline valve with a pneumatic tool. They were on a small platform which had replaced scaffolding taken down on the morning of the accident. While Beadles was on top of the platform, Pugh was handling the pneumatic tool. Pugh turned on the air, causing the tool to be ripped out of his hands. Beadles was preparing to jump on top of the tool and attempt to turn it off when the tool "swung past [Pugh] and then rapidly swang [sic] around another—about 120 degrees and the handle hit [Beadles] right about the knees and threw [Beadles] off the top of the—of the piping." Beadles fell to the ground, breaking his neck.

Although Beadles was a welder employed by Northland Maintenance, Pugh was in charge of closing this particular valve and made the decision to use the pneumatic tool. The subject valve was a 36-inch valve, while the pneumatic

In short, Beadles' showing does not demonstrate that Alyeska's conduct was "outrageous" as we have previously defined that term.[6]

## III. THE SUPERIOR COURT'S DISALLOWANCE OF CERTAIN COSTS.

■ Beadles argues that the superior court should have awarded costs for expert witnesses, non-expert witnesses, photographic enlargement of exhibits, travel expenses for counsel to travel to Colorado Springs, postage, filing fees for a petition for review, and service of process fees. "The award and amount of costs and fees is committed to the broad discretion of the court and will not be disturbed on appeal absent a clear showing that the trial court's determination was arbitrary, capricious, or manifestly unreasonable, or that it stemmed from an improper motive." *Alvey v. Pioneer Oilfield Serv.*, 648 P.2d 599, 601 (Alaska 1982), *citing Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979).

The superior court implicitly determined that Beadles' non-expert witnesses were needed for less than three hours. Since Beadles offered no evidence to the contrary, we deem his first claim of error in regard to costs to be without merit.[7]

Each of Beadles' expert witnesses who testified for one hour received $37.50 and those who testified for two hours received $62.50. In light of the fact that Administrative Rule 7(c) permits a maximum of $25.00 per hour for expert testimony, we see no error in the court's ruling.[8]

Two of Beadles' medical experts flew to Fairbanks from Colorado Springs, Colorado, and another of Beadles' experts incurred significant travel expenses. The superior court in these three instances awarded only $12.50. This ruling was erroneous in view of the provisions of Administrative Rule 7(b).[9]

The superior court denied Beadles' counsel's expenses for a trip to Colorado Springs to interview witnesses, concluding that a telephone interview would have sufficed. We cannot say that it was unreasonable on the superior court's part to find it unnecessary for Beadles' counsel to fly to Colorado Springs to interview prospective witnesses. *Cf. Eagle Air v. Corron & Black/Dawson & Co.*, 648 P.2d 1000 (Alaska 1982).[10]

The superior court also denied costs for postage, service of process on defendants other than Alyeska, and for filing a petition for review of the superior court's ruling on the summary judgment motion as to punitive damages.[11] Civil Rule 79(b) allows

---

6. Even if we considered the evidence introduced at trial, as opposed to reviewing only the summary judgment documents, we would conclude that the superior court did not err in its determination to withhold the question of punitive damages from the jury. The superior court's threshold determination is sustainable since the totality of the evidence produced does not permit Alyeska's conduct to be fairly characterized as outrageous.

tool was specifically designed for a 48-inch valve. Pugh evidently was not familiar with this particular tool but did understand the principles of its operation.

7. Administrative Rule 7(a) specifies that if the time needed of a non-expert witness, including time for travel and testimony, is less than three consecutive hours, the witness is entitled to $12.50. Beadles was awarded precisely this amount for his two non-expert witnesses.

8. Presumably the amount above the $25.00 per hour maximum was for travel expenses.

9. Administrative Rule 7(b) provides that:

   Every witness who is required to travel in excess of 30 miles from his residence is entitled to receive reimbursement for round trip travel from the witness' residence to the place of court at the rate allowed for state employees.

10. Civil Rule 79(b) authorizes as costs "any other expenses necessarily incurred in order to enable a party to secure some right accorded to him in the action or proceeding." This rule embodies the requirements of good faith and reasonable necessity. *Kaps Transport v. Henry*, 572 P.2d 72, 79 (Alaska 1977).

11. The superior court allowed costs for photographic supplies and photographs for discovery, but denied costs for enlargement of a photograph and the costs of medical charts. We are not persuaded that the superior court abused its discretion in making these rulings.

costs for postage when service is by mail or to enable a party to secure some right accorded to him in the action or proceeding. The court awarded Beadles no costs for postage. In our view this was erroneous and the question of postage costs will be remanded for redetermination. However, the superior court did not err in refusing to award costs for service of process on other defendants. *See Bovee v. LaSage,* 664 P.2d 160, 165 (Alaska 1983). Nor did the court err in rejecting any award for costs in connection with Beadles' failed petition for review. Appellate Rule 508(a) generally prohibits costs if a petition is denied by an appellate court.[12]

## IV. CIVIL RULE 68 AND ATTORNEY'S FEES.

In its separate appeal, Alyeska contends that the superior court incorrectly determined that the "judgment finally obtained" by Beadles was greater than the offer of judgment tendered by Alyeska and thus erred in denying Alyeska's Rule 68 motion for attorney's fees and awarding fees to Beadles. Alyeska argues that the "judgment finally obtained" should not include the portion of the verdict equal to the amount previously paid to Beadles in work-er's compensation benefits and further that the superior court erroneously awarded prejudgment interest on that amount.[13]

After this litigation commenced, Alyeska tendered to Beadles a written offer of judgment in the amount of $365,000.00 plus costs and attorney's fees. Beadles did not accept the offer, and, as previously noted, the jury returned a $270,918.00 verdict in his favor. Alyeska then filed a motion for an award of attorney's fees and costs incurred after the offer of judgment under Rule 68, and Beadles requested fees pursuant to Rule 82.

The superior court awarded Beadles attorney's fees of $39,163.30 pursuant to Rule 82. The court explained that Beadles was entitled to prejudgment interest of $107,759.86 as of the date of the offer of judgment and that his recovery as of that date was $372,677.86. Since this total exceeded Alyeska's $365,000.00 offer, the superior court concluded that Beadles was the prevailing party and was thus entitled to attorney's fees under Rule 82.

■ Alyeska first argues that the amount of worker's compensation benefits received by Beadles should be deducted from his total recovery in computing the

---

12. In his reply brief, Beadles set forth a new argument grounded on *Hayes,* 718 P.2d at 929. Beadles argues that the superior court's pre-trial order requiring him to summarize the testimony of each of his intended witnesses (twenty in all), and to serve the summaries on opposing counsel, violated the work product rule and prejudiced his case. Assuming the point has been properly raised, we do not discern any prejudice to Beadles arising from this discovery order. In regard to the question of prejudice, we said in *Hayes:*

> In the present case, the superior court's order compelling answers to these interrogatories constitutes *harmless error. Under* Alaska Civil Rule 61, the Hayeses must show prejudice. *McCracken v. Davis,* 560 P.2d 771, 774 (Alaska 1977) (harmless error interpreted as requiring appellant to show not only error but also substantial prejudice). It is difficult at this stage of the litigation to show that the party has been prejudiced by the order or that the question is not moot. The discovery rules vest broad discretion in the trial court which

will generally bar reversal except under very unusual circumstances. 8 C. Wright, A. Miller, Federal Practice and Procedure § 2006, at 34–35 (1970). A new trial would not remedy the error here since Xerox already knows and would know the privileged information. A reversal is less likely when the order grants discovery since there is no effective means of correcting such an error once discovery has been had.
>
> *Id.* at 943.

13. Alaska Civil Rule 68 provides in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

"judgment finally obtained" for purposes of the Rule 68 comparison of Beadles' judgment with the offer made by Alyeska because that amount must be repaid to the worker's compensation carrier and thus does not constitute part of the judgment obtained by Beadles. We consider this argument completely devoid of merit.

■ Alyeska's second argument regarding the superior court's Rule 82 computation is that Beadles should not have received prejudgment interest on the amount of benefits he received because such interest represents compensation for loss of use of money, compensation to which Beadles is not entitled because the principal amount never belonged to him. Alyeska further asserts that awarding Beadles prejudgment interest allows him a double recovery because he received compensation benefits in a steady stream for almost four years following the accident and thus was not deprived of the use of that money.

We reject these arguments for the reasons expressed by the Fifth Circuit in *Webster v. M/V Moolchand, Sethia Liners, Ltd.*, 730 F.2d 1035 (5th Cir.1984). In *Webster*, the court allowed the injured employee prejudgment interest on the entire amount of his recovery. With respect to an objection to the allowance of prejudgment interest on the sum for which the compensation carrier was subrogated to the judgment "because Webster will not recover this sum and should not get interest on it," the court acknowledged the argument as "plausible" but added, "it will not bear examination." *Id.* at 1040. The court continued:

> To the extent that Webster received periodic payments from his insurer after the date he filed his claim [the date on which prejudgment interest commenced], the insurer may in turn be entitled to the interest on what it paid. If some division of

interest is equitable, its sharing lies between the insurer and Webster.

*Id.* at 1041.

AFFIRMED in part, MODIFIED in part.