Raymond WEBSTER, Jr., Plaintiff-Appellant Cross-Appellee,

v.

M/V MOOLCHAND, SETHIA LINERS, LTD., Defendant-Appellee Cross-Appellant.

No. 83–3056.

United States Court of Appeals, Fifth Circuit.

April 30, 1984.

---

James A. Wysocki, Robert W. Drouant, New Orleans, La., for plaintiff-appellant cross-appellee.

Gelpi, Sullivan, Carroll & Laborde, Gerard T. Gelpi, New Orleans, La., for Sethia Liners, Ltd.

Before RUBIN, REAVLEY and GARWOOD, Circuit Judges.

RUBIN, Circuit Judge:

Special interrogatories to the jury have wondrous virtues.[1] The court may carefully consider the exact question to be asked, the possible ambiguities in the form of the question, and the consequences of each of the possible answers. If, however, the parties do not carefully reflect on the questions and on the implications of the jury's responses, they may find that the jury's answer did not resolve the case but left room for an appeal. In this personal injury suit, as a result of the parties' failure fully to explore the implications of every possible answer to a special jury interrogatory and to clarify the question, the interrogatory was so framed that the jury's answer created a possible inconsistency with its answer to another question. Hence, the plaintiff, disappointed with the amount of the jury verdict, seeks to impugn the verdict. Not to be outdone, the defendant seeks completely to escape liability. We conclude that the trial was fair, the jury charge was a reasonably clear exposition of law, the interrogatory was not defective, and the various other points at issue were properly resolved by the trial court. Hence, we affirm.

## I.

Raymond Webster, Jr., a longshoreman, seeks damages for injuries he sustained while loading bags of sugar on the M/V MOOLCHAND. Webster's knee was injured when a winch being used in the operation slipped, causing the load of sacks that was being lowered into the hold to pin Webster against cargo already stowed. The winch had slipped several times earlier in the day and the vessel's crew had tried to repair it. Webster contends that the crew's failure to repair the winch was negligence. The vessel owner contends that the stevedore, who employed Webster, was at fault for failing to stop work when its employees learned that the winch was defective, or that it should have substituted a shoreside crane for the vessel's defective winch. Webster, of course, is not entitled to recover if his injury was caused solely by the stevedore's fault because he cannot recover from his employer in tort. If, on the other hand, both the vessel and his employer were at fault, he is entitled to recover the entire amount of his damages from the shipowner.[2]

After first asking the jury the usual questions about negligence of the shipowner and the plaintiff, the court, without objection by Webster, submitted this interrogatory to the jury:

5.  To what extent, expressed as a percentage, did the negligence of defendant cause plaintiff's injury?

    <u>45%</u>

    To what extent, expressed as a percentage, did the contributory negligence of the plaintiff cause his own injury?

    <u>55%</u>

    (NOTE: THE ANSWERS TO QUESTION 5 SHOULD TOTAL 100%)

    <u>100%</u>

Webster contends that the jury was misled by the interrogatory because there was no separate blank for the stevedore's negligence; the jury may have believed that Webster was chargeable with the stevedore's fault. He asserts that there was no evidence of his having been negligent and much that pointed to stevedore fault. Hence the jury verdict, he argues, improperly charged him with fault that was attributable to his employer. Because Webster failed to object to the interrogatory, he seeks to find error in the court's refusal to charge the jury that Webster was not legally responsible for the stevedore's fault.[3]

The court did charge the jury:

In order to prevail, the plaintiff ... must prove by preponderence [sic] of the evi-

---

1.  See *Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 405 (5th Cir.1979), *cert. denied* 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), and cases cited therein.

2.  33 U.S.C. § 905(b) (1976); *see Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266, 99 S.Ct. 2753, 2759, 61 L.Ed.2d 521, 530 (1979).

3.  This is the charge he requested:

dence that the defendant, the ship and ship owner and its crew, was negligent and that such negligence was approximate [sic] cause of the damage sustained by the plaintiff....

\* \* \* \*

Negligence might be an approximate [sic] cause of damage, even though it operates in combination with the act or acts of another....

\* \* \* \*

The defendant contends that the plaintiff was himself negligent and that such negligence was the approximate [sic] cause of his own injury....

\* \* \* \*

[I]f you find that the accident was due partially to the fault of the plaintiff, then that his own negligence was, for example, 50 percent responsible for his own damage, then you will fill in that percentage as your findings on the special verdict form....

The jury assessed the total damage at $51,000 and, on that basis, the court rendered judgment in Webster's favor for $22,950.

The shipowner counters by urging that Webster's complaint is of no moment; there was no evidence that the ship's crew was at fault and the court should have directed a verdict in its favor. The operation was being conducted only by the stevedore's gang. While the winch had slipped earlier, the ship's crew was not made aware that the winch was slipping at the time Webster was injured and the crew had no reason to believe that the stevedore would not take appropriate action to remedy the situation if it again began to slip.

The shipowner is not charged with supervising the stevedore's operations. Once the stevedore has begun to load cargo, the shipowner has no duty to discover danger.[4] Here, however, there was evidence that the winch was not operating properly, that this was brought to the crew's attention, and that their repair efforts failed. Thus the jury might properly have concluded that the ship's owner had "actual knowledge of the danger *and* actual knowledge that he [could] not rely on the stevedore to remedy the situation," matters that make the shipowner chargeable.[5] The shipowner is not relieved of responsibility by the failure of the longshoremen again to seek repair of the winch just before Webster's injury. It had adequate notice that the winch was slipping and that this created a danger to the longshoremen. It failed to correct the problem, and it knew that the stevedore was relying on the operation of the winch instead of using substitute equipment. That the longshoremen had authority to shut down the operation if they thought there was a dangerous or unsafe condition demonstrates only that both the shipowner and the stevedore's employees may have been negligent.[6]

The shipowner's fault is not obliterated by the argument, even if proved, that the slipping of the winch would not have been dangerous unless Webster were out of position. Patently, this might demonstrate only mutual fault.

Therefore, the district court properly submitted to the jury the issue of the shipowner's negligence. It was not plain error to ask only about the relative fault of the shipowner and Webster. We turn, therefore, to Webster's argument that the

---

If the shipowner and the stevedore or its co-workers of plaintiff are all negligent, the shipowner alone is fully responsible for all damages the plaintiff is entitled to recover. In other words, the plaintiff is not responsible for any negligence of his co-workers.

4. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 170, 101 S.Ct. 1614, 1624, 68 L.Ed.2d 1, 14 (1981); *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1036 (5th Cir.1983).

5. *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1038 (5th Cir.1983) (emphasis in original) (footnote omitted).

6. *Cf. Woodruff v. United States*, 710 F.2d 128, 130–31 (4th Cir.1983) (if stevedore is "obviously improvident," shipowner has duty to intervene).

charge was improper, reading it as a whole, as we must and should.[7]

The court charged the jury that, to recover, Webster must prove that the shipowner was negligent and that this negligence was a proximate cause of Webster's injury. After properly defining proximate cause, the court charged the jury that negligence may be a proximate cause "even though it operates in combination with the act or acts of another." It then instructed the jury about contributory negligence and charged that the vessel owner bore the burden of proving that Webster was himself negligent in a fashion that proximately caused his injury. It gave examples of how to calculate contributory negligence and, in doing so, stated that Webster's damages were to be reduced only by "his own negligence" or "if plaintiff was himself negligent."

Taken as a whole the jury charge sufficiently informed the jury of the point sought to be made by the rejected charge. The court should have given the requested charge, for it was not only correct[8] but succinct and clear. Little was to be gained by saving the few seconds needed for it. However, we cannot find that the court's failure thus to elucidate what it said elsewhere in the charge was prejudicial to Webster.

That both Webster and the shipowner thought the special interrogatory clear in the light of the charge is indicated by the fact that neither objected to the interrogatory or suggested its rephrasing. Webster's own proposed interrogatory itself provided no blank for stevedore fault. The possibility that as phrased, the interrogatory allowed the jury to lay the stevedore's fault on Webster was an afterthought. We find that the error complained of did not affect Webster's "substantial rights" and should not serve as a basis for reversal. Fed.R.Civ.P. 61.

## II.

By a pretrial ruling the court refused to hold inadmissible the fact that Webster had been convicted of assaulting a police officer, a misdemeanor, in 1975, seven years before the trial. Webster's counsel, therefore, believed it prudent as a matter of trial strategy to mention the conviction in his opening argument. No evidence concerning it was, however, elicited. We need not dwell on whether the strategy was thrust on Webster's counsel or whether he waived any error by first referring to the episode for it is much ado about nothing. This is the only mention of the incident:

> We understand that Sethia Liners is going to try to bring up something about a 1975 conviction where he paid a $50 fine for assault on a police officer when there was some kind of dispute in his own apartment and the police came to straighten it up, arrested him, and he paid a $50 fine.

There could be no prejudice from this casual reference unless we assume that jurors are both fools and mindless of their oaths and of the instructions to decide the case on the evidence and not on counsel's argument. Antiseptic trials are neither expected nor possible. Errors are made in the best-conducted ones. Reversal is permissible only if the error affects a substantial right. Fed.R.Evid. 103, Fed.R.Civ.P. 61. Even if the court's in limine ruling was wrong and led Webster's counsel into error, the error was harmless.

Webster's brief blends the 1975 episode with one that occurred in 1981, concerning which evidence was admitted—without objection. This evidence concerned a struggle with a police officer that occurred after Webster's injury on the M/V MOOL-CHAND. Counsel's failure to voice the objection waived it. *Lacaze v. Olendorff*, 526 F.2d 1213, 1223 (5th Cir.1976); *Peterson v. Weinberger*, 508 F.2d 45, 54 (5th Cir.), *cert.*

---

**7.** *Lacaze v. Olendorff*, 526 F.2d 1213, 1220 (5th Cir.1976); *Smith v. Hearod*, 498 F.2d 663, 665 (5th Cir.1974); *Andry v. Farrell Lines, Inc.*, 478 F.2d 758, 759 (5th Cir.1973).

**8.** *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 271, 99 S.Ct. 2753, 2762, 61 L.Ed.2d 521, 530 (1979).

*denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); *Skaggs v. J.H. Rose Truck Line, Inc.,* 435 F.2d 695, 696 (5th Cir.1970). Whether or not the evidence would have been admissible had objection been made, the court's failure to exclude it sua sponte was not plain error.

## III.

██ The vessel was not available for inspection in the United States. To prepare for trial, Webster's lawyer went from New Orleans to inspect it in Sao Paulo, Brazil. The photographs he took there were used in evidence. The court refused to tax as costs his transportation expense, $1,615, on the ground that the photographs "were not so essential to [Webster's] case as to warrant an award of costs." [9] "Fees for exemplification and copies of papers necessarily obtained for use in the case" are taxable as costs. 28 U.S.C. § 1920(4). This provision has been interpreted to include the cost of obtaining exhibits.[10] Counsel cites no case in which a lawyer's expense in traveling to inspect the scene of an accident or to take photographs of it has been taxed as "costs" under § 1920, and the language of the statute seems to preclude its extension beyond the payment of the actual cost of exemplification and reproduction of copies. Recovery of such disbursements in addition to statutory costs has sometimes been allowed when an award of attorney's fees is made, as an expense incurred by the attorney.[11] But there is no basis here for taxing either lawyer's fees or expenses to the shipowner.

## IV.

Webster's judgment was for $22,950. The stevedore's compensation insurer had paid him $17,167.33, and was subrogated to his judgment in that amount. The shipowner, therefore, objects to the district court's allowance of prejudgment interest from the date of judicial demand because Webster will not recover this sum and should not get interest on it. The argument is plausible, but it will not bear examination.

██ As a threshold matter, Webster argues that state law governs the question of prejudgment interest because federal jurisdiction is based on the parties' diversity of citizenship. Under Louisiana law, interest is awarded from the date of judicial demand. *See Laird v. Hudson Engineering Corp.,* 449 F.2d 216, 217 (5th Cir.1971), *cert. denied sub nom. United States Steel Corp. v. Laird,* 405 U.S. 955, 92 S:Ct. 1177, 31 L.Ed.2d 232 (1972). Although we reach the result Webster advocates, we do not do so by the route he suggests. The situs of the injury was on navigable waters and the negligence bears a significant relation to maritime activity. Under the exclusivity provisions of the Longshoremen's and Harborworkers' Compensation Act,[12] therefore, maritime rather than state law must apply. *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1042 (5th Cir.1983); *see also Jones & Laughlin Steel Corp. v. Pfeifer,* —— U.S. ——, ——, 103 S.Ct. 2541, 2555, 76 L.Ed.2d 768, 788 (1983) (federal rule of damages must apply in LHWCA cases); *Hite v. Maritime Overseas Corp.,* 380 F.Supp. 222, 225–26 (E.D.Tex.1974) (federal law applies even though LHWCA case filed pursuant to diversity requirements).

██ Although the awarding of prejudgment interest lies within the discretion of the judge, "the allowance of prejudgment interest in maritime law is the rule, rather than the exception." *Helaire,* 709

---

9. The court cited *Esler v. Safeway Stores, Inc.,* 77 F.R.D. 479 (W.D.Mo.1978); *Department of Highways v. McWilliams Dredging Co.,* 10 F.R.D. 107 (W.D.La.1950), *aff'd,* 187 F.2d 61 (5th Cir. 1951).

10. 6 J. Moore, Moore's Federal Practice ¶ 54.-77[6], at 1739 & n. 10 (1983); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2677, at 364–69 (2d ed. 1983); Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 3 Civil Practice and Litigation in Federal and State Courts 1271, 1318–19 (ALI–ABA Course of Study Materials 1984).

11. *See* Bartell, *supra* note 10, at 1326, and cases cited therein.

12. 33 U.S.C. § 901 et seq. (1976).

F.2d at 1042; accord, Masters v. Transworld Drilling Co., 688 F.2d 1013, 1014 (5th Cir.1982); Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724, 728 & n. 3 (5th Cir.1980). To the extent that Webster received periodic payments from his insurer after the date he filed his claim, the insurer may in turn be entitled to the interest on what it paid. If some division of interest is equitable, its sharing lies between the insurer and Webster.

The shipowner relies on Candiano v. Moore-McCormack Lines, Inc., 407 F.2d 385 (2d Cir.1969). That case, however, is inapposite. In Candiano, the injured plaintiff sued the shipowner, which asserted a third party claim against Candiano's employer, the stevedore, for breach of its warranty of workmanlike service. The trial court awarded a judgment of $50,000 against the shipowner, but also found that the shipowner was entitled to recover the same amount from the stevedore. The stevedore then assumed further defense of the action, losing appeals to the Second Circuit and the Supreme Court. As Candiano's employer, the stevedore had provided him with approximately $8,000 in compensation and medical payments, entitling the stevedore to a lien in this amount against Candiano's ultimate recovery. The sole issue before the Second Circuit was whether Candiano was entitled to post-judgment interest from the stevedore on the $8,000 he had already received. The court held that Candiano should receive interest only on the $42,000 that had been withheld from him.

In Candiano, the compensation at issue flowed directly from the defendant to the plaintiff, so that no prevailing party had been deprived of the use of money while the case was on appeal. Here, in contrast, the compensation carrier expended sums for which it is entitled to reimbursement from the defendant shipowner. That reimbursement rightly includes compensation for the use of its own money to pay bills for which the defendant is liable.

For these reasons, the judgment is AFFIRMED.