Lee A. PICHOFF, Jr., Plaintiff-Appellee
Cross-Appellant,

v.

BISSO TOWBOAT CO., INC.,
Defendant-Appellant
Cross-Appellee.

No. 83–3547.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1984.

**301**

Edward J. Koehl, Jr., New Orleans, La., for defendant-appellant cross-appellee.

Elsie Halford, Metairie, La., for plaintiff-appellee cross-appellant.

Before GEE, POLITZ, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Bisso Towboat Company appeals from a judgment rendered against it in favor of its employee, Lee Pichoff, for injuries Pichoff suffered while repairing Bisso's boat. Pichoff cross-appeals from the denial of his motion for additur. We affirm.

I

Bisso operated a tugboat service and boat repair yard in New Orleans. In late 1980, it made plans to expand its business by starting a launch service to ferry crews and supplies from Burnside, Louisiana to ships anchored offshore. Bisso hired Pichoff in September of 1980 to procure old vessels to be reconditioned for the launch service, and to manage the service once it began.

Between October 1980 and February 1981, Pichoff located two crewboats for Bisso, and supervised their reconditioning in Bisso's repair yard. In February of 1981, Pichoff located a third boat, the GEMINI, which Bisso purchased. Unlike the first two, the GEMINI was supposedly ready for immediate use without reconditioning. On February 7, though, while steaming toward the launch dock, the GEMINI broke down and was towed to Bisso's repair yard.

On February 8, Pichoff reported to Milton Lange to receive a work assignment. Lange was Bisso's general manager, and was in charge of all operations at the New Orleans yard, such as purchasing and personnel, as well as supervising Bisso's tugboat and repair operations. Lange assigned Pichoff to find out what was wrong with the GEMINI. During the day, Pichoff and a coworker, Serpas, made various repairs to the vessel while it remained in the water. On February 9, Serpas reported to Lange that one of the fuel tanks was leaking. Lange told Pichoff to locate and repair the leak.

The fuel tanks on the GEMINI were located in the bilge, which had no permanent lighting. Pichoff asked Lange for a "drop light"—a light bulb and enclosure that could be hooked to the walls or ceiling of the bilge. Lange told Pichoff to ask two other yard workers for a drop light. When Pichoff reported that no drop light could be

found, Lange gave Pichoff a flashlight and told him to "get down there and hurry up." Serpas testified that "Captain Ed" Slattern, a Bisso shareholder, was "getting on" Lange "about the boat not being ready"; the trial court found as a fact that Lange "was anxious to get the vessel to the Burnside terminal for a job that was scheduled to commence the next day."

Pichoff discovered a leak in the port fuel tank. While shining his flashlight on the leak, he stepped backward, slipped in a pool of diesel fuel on the bilge floor, fell, and injured his back.

Pichoff sued Bisso under the Jones Act, general maritime law, and the Longshoremen's and Harbor Workers' Compensation Act, but later voluntarily dismissed the Jones Act and general maritime law claims. After a bench trial, the court filed Findings of Fact and Conclusions of Law. It concluded that

> Bisso was negligent in failing to provide Pichoff with adequate lighting ... Had Bisso provided a drop light, Pichoff would likely have [not injured himself.] It was foreseeable that Pichoff would need a drop light to provide greater illumination and to free his hands while he inspected the compartment. Bisso was negligent in ordering Pichoff to conduct a hurried inspection without one.

It also held that an employee could file an LHWCA suit "against his employer *qua* vessel owner" to recover damages caused by the vessel's negligence.

The court awarded damages of $212,734.95. Of this amount, $28,500 represented Pichoff's future wages for one year, based on the court's finding that Pichoff would undergo back surgery within three months after trial, and would be able to resume work nine months after the sur-

gery. After Bisso appealed the court's liability holding, Pichoff filed a motion for additur to cover wages lost during the pendency of the appeal. The court denied Pichoff's motion, and he cross-appealed.

## II

 Section 905(b) of the LHWCA allows a person covered by the Act to sue for damages caused by the negligence of a vessel. Such an action is permissible even if the vessel owner is also the plaintiff's employer, and would otherwise be immune from suit under § 905(a). *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 2547–48, 76 L.Ed.2d 768 (1983). Section 905(b), however, expressly provides:

> If [plaintiff] was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel.[1]

 Bisso contends that it was negligent as a vessel repairer, not as an owner. *See Pfeifer*, 103 S.Ct. at 2547 n. 6; *Chiasson v. Rogers Terminal & Shipping Corp.*, 679 F.2d 410, 415 (5th Cir.1982). It claims that Lange's failure to give Pichoff a drop light was an act performed in the course of the ongoing repair of the GEMINI, and that Lange was therefore a "person engaged in providing repair services" under § 905(b). As the trial court found, however, Lange was negligent in two ways: "failing to provide Pichoff with adequate lighting," and "ordering Pichoff to conduct a *hurried inspection*" without a light. (Emphasis added.) Although providing adequate lighting for bilge repairs may be a duty of a repairer, not an owner,[2]

---

**1.** The Longshoremen's and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, signed into law September 28, 1984, amended this sentence to forbid an employee engaged in "shipbuilding, repairing, or breaking services" from filing an LHWCA action against his employer even if the employer is the vessel owner. *Id.* at § 5(a)(1). This change applies only to lawsuits stemming from injuries after the effective date of the amendments, though,

*id.* at § 28(c), and does not affect the decision here.

**2.** Generally, when the vessel owner and repair contractor are separate entities, the owner has a duty only to tender the ship to the repair contractor in a condition such that the repairer can act with reasonable safety. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166–67, 101 S.Ct. 1614, 1621–22, 68 L.Ed.2d 1 (1981).

Lange acted in haste solely because he was a supervisor in charge of Bisso's overall operations, and had Bisso's corporate interests as a vessel charterer in mind. This second aspect of Lange's negligence is chargeable to Bisso as owner, and prevents Bisso from enjoying LHWCA immunity.

In *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789 (2d Cir.1979), the Second Circuit considered an argument similar to the one Bisso presses here. In *Smith*, a vessel owner was charged with negligently causing the death of its repairer-employee during a repair mission supervised by the vessel owner's president. The district court had held that because the president was participating in the repair operation, he was a fellow repairer, and that the vessel owner was immune from suit for his negligent omissions. The Second Circuit reversed on the ground that the district court's analysis "did not entail sufficient scrutiny of the particular negligent acts that were found to have been committed." 604 F.2d at 796.[3] As the court explained, even during repair or longshoring operations, "supervisory personnel in particular will continue to fulfill their general duties as agents of the shipowner, and the negligent discharge of these responsibilities can still result in liability to the vessel." *Id.* at 796 n. 5.

When Lange told Pichoff to hurry up, he was fulfilling a duty as an agent of the shipowner. Slattern had made it clear to him that Bisso was about to lose money if it could not provide a boat to a customer the next day; Lange's order to Pichoff was guided by this corporate concern. It is not uncommon for vessel owners to be found negligent for insisting, as Lange did, that workers perform their jobs hurriedly despite unsafe working conditions. *See, e.g., Lubrano v. Royal Netherlands Steamship*

Co., 572 F.2d 364 (2d Cir.1978) (ship's crew negligent for ordering longshoremen to keep working despite slippery decks); *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485 (E.D. La.1978) (owner negligent in ordering use of small, fast boat rather than large, slow one despite heavy seas).

■ The line between owner and repairer is dull and elusive, at best. Fortunately, the Congress has for future cases ended this sometimes pretentious distinction. Aided in our task by intuition and common sense, we conclude here that the district court's call was rational and defensible. Lange's negligence was at least partly in his capacity as representative of the vessel owner, rather than his capacity as repair supervisor. The judgment against Bisso is thus permissible under § 905(b).[4]

### III

Pichoff claims that he should have been awarded future wages from the date of trial until nine months after the judgment becomes executory. He argues that he cannot afford the surgery that will allow him to return to work until he receives his damages award, that this appeal has prevented him from collecting that sum, and that the trial court thus erred in denying his motion for additur.

■ The trial court's decision not to increase the quantum of damages it awarded for future wages is subject to review only for abuse of discretion. *See Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 182–83 (5th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). The court here had no control over contingencies such as when Pichoff's surgery would occur, and was under no duty to

---

Bisso's expert testified without contradiction that it would not have been reasonable to expect the owner of the GEMINI to have equipped its bilges with permanent lighting.

**3.** The court found those negligent acts to be "akin to a failure to provide a safe place to work," a duty borne by vessel owners. *Id.*

**4.** Even if Bisso was negligent partly as an owner and partly as a repair .contractor, its negligence as owner will support a judgment against it for all of Pichoff's damages. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 264, 99 S.Ct. 2753, 2758, 61 L.Ed.2d 521 (1979); *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789, 796–97 (2d Cir.1979).

adjust its award to reflect post-trial events. Its denial of Pichoff's motion for additur was not an abuse of discretion.

AFFIRMED.